NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 3 1 2015

CLERK, U.S. DISTRICT COURT
By _____
            **Deputy**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SAFEWAY INC.,                        §
                                §
       Plaintiff,                §
                                §
VS.                                  §   NO. 4:14-CV-683-A
                                §
PDX, INC.,                           §
                                §
       Defendant.                §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision are cross-motions for summary judgment, one filed by plaintiff, Safeway, Inc. ("Safeway"), seeking summary adjudications in its favor as to relief it sought by its complaint against defendant, PDX, Inc. ("PDX"), and denying the relief sought by "PDX" in its counterclaim against Safeway, and the other filed by PDX seeking summary adjudications against Safeway as to the relief Safeway sought against PDX, and in PDX's favor as to its counterclaim against Safeway. After having considered both motions, the entire record in the above-captioned action, and pertinent legal authorities, the court has concluded that Safeway's motion should be denied and PDX's motion should be granted.

I.

Background

A.   Nature of the Controversy

The outcome of both motions for summary judgment turn on the legal effect under Texas law of an indemnification provision contained in an agreement entered into between Safeway and PDX in June 2006 titled "Keystone Indemnity Agreement" ("KIA").   The claims with respect to which PDX seeks indemnification from Safeway pursuant to the KIA are being asserted against PDX by Kathleen Hardin ("Ms. Hardin") and Dane Hardin (collectively "the Hardins"), as plaintiffs, against PDX and several other parties in litigation pending in the Superior Court of the State of California, County of Alameda, as Case No. RG11600291, styled "Kathleen Hardin and Dane Hardin, Plaintiffs, vs. Palo Alto Medical Foundation, Inc., et al., Defendants" ("California Action").

B.   Claims Against PDX in the California Action

The Hardins alleged in the California Action that Ms. Hardin had a serious adverse reaction to medicine she purchased at one of Safeway's retail stores in California.   They complained that Ms. Hardin did not receive when she purchased the medicine a sufficient warning of the medicine's potential side effects, including the adverse reactions she suffered; and, they alleged

2

that PDX bears responsibility, along with others, for Ms.
Hardin's failure to receive adequate warning of the side effects.

In the California Action, the Hardins alleged products
liability and negligence causes of action against PDX based on
PDX's participation in the process by which informational
material Safeway gave Ms. Hardin when she purchased the medicine
was created.[1]  In their products liability cause of action
against PDX, the Hardins alleged:

> 72.  The software program created, designed,
> produced, distributed and licensed for use to
> retailers/licensees by Defendant[] PDX . . . was
> defective in design in so far as it was designed and
> modified to print monographs that automatically omitted
> warnings of serious risks pertaining to the drug the
> monograph accompanied, including, in this case,
> Lamotrigine.
>
> 73.  The said defects in design caused Plaintiff
> to sustain the herein described injuries and damages.
>
> 74.  As a direct result of the defective software,
> Plaintiff KATHLEEN HARDIN was caused to suffer the
> injuries described herein.

Doc. 30, Ex. A at 18-19, ¶¶ 72-73.[2]  And, in their negligence
causes of action against PDX, they alleged:

> 76.  At all times herein mentioned Defendant[] . .
> . PDX . . . owed a duty of reasonable care to Plaintiff
> KATHLEEN HARDIN, and assumed a duty of care by

---

[1]The papers in this action indicate that when the California Action was filed Safeway was a
defendant, and that Safeway was dismissed based on a limitations defense.

[2]The "Doc. ___" references are to the numbers assigned to the referenced items on the clerk's
docket in this Case No. 4:14-CV-683-A.

undertaking to render services to Safeway of a kind
that Defendant[] . . . should have recognized as
necessary for the protection of third persons,
including Plaintiff KATHLEEN HARDIN.

77. Defendant[] . . . breached [its] duty of
reasonable care to Plaintiff by failing to provide
reasonable and adequate warnings regarding Plaintiff's
prescription for Lamictal/Lamotrigine. If Defendant[]
PDX . . . had not intentionally modified the software
to allow Safeway to distribute abbreviated drug
monographs that automatically omitted warnings of
serious risks, then Plaintiff would not have taken the
medication and would not have sustained the injuries
and damages described herein.

78. Defendant[] PDX['s] . . . actions were taken
with malice, oppression and fraud in that Defendant[]
PDX . . . intentionally modified the software to allow
the distribution of five-section monographs that
automatically omitted warnings of serious risks, when
Defendant[] PDX . . . knew and expressly stated in the
2006 Agreement, that eight-section monographs should be
distributed to enable consumers to avoid harm. Said
conduct was despicable and in willful and conscious
disregard for the rights and safety of others,
including Plaintiff, herein.

79. As a direct and proximate cause of the
negligent conduct by Defendants Safeway, . . . PDX [and
others, Ms. Hardin sustained and will continue to
sustain the injuries and damages described herein.

Id. at 19-20, ¶¶ 76-79.

C.   Potentially Pertinent Provisions of the KIA

PDX is in the business of developing and licensing computer

software to be used by pharmacies in the fulfillment of

prescriptions for medication. Safeway is a customer of PDX, and

a user of the PDX pharmacy system, which permits a pharmacy, such

4

as Safeway, to print and deliver a Patient Education Monograph to its customers when it fills a prescription.  The KIA was entered into between PDX and Safeway (which was referred to in the KIA as "Customer") to put in writing understandings between them concerning information Safeway would provide to its prescription medicine customers by a monograph prepared through software provided by PDX.

PDX's standard monograph software program created monographs that had eight paragraphs, three of which were entitled "Overdose," "Before Using," and "Additional Info," respectively. The main subject matter of the KIA, as recited in the document, was a modification by PDX of the software program for Safeway so that Safeway would have the ability to omit those three paragraphs from the monographs it supplied to its customers.  The KIA recited that PDX was in a position to require its software to accomplish Safeway's desires.  The substantive parts of the KIA were entered into in the context of those recitations.  Included in the substantive parts was the following:

> 1.    Upon execution of this Agreement PDX will provide, in a commercially reasonable amount of time, programming written in the PDX programming language to execute on the most current update for the 4.6.05 released version of the PDX Pharmacy System software that will create output to meet the requirements

provided by CUSTOMER and agreed to by PDX for the PDX
Pharmacy Management system software (the "Program"). .
. .

Doc. 16 at 3, ¶ 1.

The indemnification provision of the KIA that is at the

heart of the controversy between Safeway and PDX in this action

reads as follows:

> 3.   CUSTOMER hereby expressly waives any claims
> against PDX with respect to such Program and the use of
> such and further agrees to indemnify and hold PDX
> harmless from any and all loss, damage, or expense (or
> claims of damage or liability) asserted against PDX
> arising from CUSTOMER's use of the Program, including,
> without limitation, claims that the Program or the
> purpose for which this Program is used by CUSTOMER
> constitutes a violation of the Title VI, SEC. 601,
> EFFECTIVE MEDICATION GUIDES provisions of Pub. Law 104-
> 180.  Such indemnification to include, without
> limitation, reasonable attorney fees, salaries of PDX
> employees or executives called to testify or provide
> depositions, travel and accommodation costs for PDX
> employees or executives called to testify or give
> depositions and reasonable legal costs incurred by PDX
> due to such claims.

Id. at 3, ¶ 3 (emphasis added).[3]  Other provisions of the KIA

that are potentially pertinent to issues raised by the parties in

---

[3]The reference in the indemnification provision to "Title VI, Sec. 601, Effective Medication
Guides provisions of Pub. Law 104-180" is to legislation mentioned in the KIA that required members of
the healthcare industry to develop regulations concerning oral and written prescription information for
consumers. Doc. 16 at 2-3.  The wording of the KIA indicates that PDX's standard monograph software,
before modification to satisfy Safeway's desires, was intended to assist in compliance with the regulatory
requirements, which were commonly known as the "Keystone Criteria." Id.

6

this action are as follows:

> 5.   This Agreement is governed by the laws of the State of Texas without giving application to the conflicts of laws provisions thereof.

> 6.   This Agreement constitutes the entire Agreement between the parties concerning the subject matter hereof.  No amendment, modification, extension or cancellation of this Agreement shall be binding on the parties unless mutually agreed to and executed in writing by each of the parties.

> \* \* \* \* \*

> 8.   In any legal action on or concerning this Agreement, the prevailing party shall be awarded its reasonable attorneys' fees, costs and necessary disbursements, to be paid by the non-prevailing party.

Id. at 4, ¶¶ 5-6, 8.

The parties are in agreement that Texas law governs the interpretation and application of the KIA.

D.   Relief Sought by Safeway's Complaint

Safeway filed its complaint for declaratory judgment on August 21, 2014.  It alleged that PDX had demanded that Safeway indemnify and defend PDX for the negligence and strict liability claims made against PDX in the California Action.  Safeway requested that the court enter declaratory judgment that (1) the indemnity provision in the KIA does not satisfy requirements under Texas law that would obligate Safeway to defend PDX for the claims asserted against PDX in the California Action or to indemnify PDX for those claims, and (2) Safeway is entitled to

7

recover from PDX Safeway's reasonable and necessary attorney's fees.

E.   PDX's Counterclaim

PDX filed its counterclaim against Safeway on September 29, 2014, asserting a breach of contract cause of action against Safeway based on Safeway's refusal to provide the indemnification that PDX contends it should receive pursuant to the KIA indemnification provision, and requesting specific performance by Safeway of its KIA indemnification obligations, declaratory relief regarding the rights and duties of the parties under the KIA, and recovery of attorney's fees.

II.

The Grounds of Each of the Motions

A.   Safeway's Motion

Safeway asserted that it is entitled to summary judgment on its request for declaratory relief because, when Texas law is applied, the indemnity provision in the KIA does not obligate Safeway to indemnify PDX for claims resulting from PDX's own negligence or based on strict liability or for potential punitive damages.  The focus of Safeway's arguments in support of its motion is the rule of Texas law that an indemnity provision will not require the indemnitor to provide indemnification to the indemnitee for losses resulting from the negligence or strict

8

liability of the indemnitee unless the indemnification provision expressly so provides.  Alternatively, Safeway argues that even if that were not so, PDX would not be entitled to indemnification for the claims asserted against it by the Hardins in the California Action because those claims do not arise out of Safeway's use of "the Program" referenced in the indemnity provision, but, instead, are claims arising out of PDX's own conduct, including PDX's programming, marketing, and sale of the software it provided to Safeway.

Safeway maintained that the indemnity provision in the KIA should not extend to punitive damages because, Safeway argued, indemnity for punitive damages should be against public policy, and for the added reason that Safeway is of the belief that the express negligence doctrine would have to be satisfied as to the underlying cause of action against PDX for there to be an indemnity obligation related to the punitive damages claim against PDX.

Safeway includes in its motion for summary judgment a request for a ruling that it is entitled to recover its reasonable attorney's fees and costs.

B.   PDX's Motion

PDX noted in its brief in support of its motion for summary judgment that it was added as a party defendant in the California

9

Action "based solely on the fact that PDX created and provided

the Program to Safeway allowing it to print and provide Mrs.

Hardin with the Short Version Monograph," Doc. 18 at 24, and,

that the summary judgment record establishes that:

> Safeway requested, and PDX agreed to perform, a
> single act with a specified result--give Safeway the
> capability to elect to print a five-paragraph Monograph
> instead of having the software automatically print an
> eight-paragraph one.  PDX performed exactly as Safeway
> requested by providing the code for download that
> Safeway could elect to install, and thereby giving
> Safeway the print capability it specifically requested.
> When Safeway chose to install the software, the Program
> performed exactly as the parties intended.

Id. at 30 (footnotes omitted).  PDX added that:

> There are no allegations by the Hardins or
> Safeway, and also no evidence anywhere, that the
> Program provided to and used by Safeway malfunctioned
> or failed, in any way.  No one alleges, and there is no
> evidence that the Program did not perform precisely as
> Safeway requested.  No one alleges, and there is no
> evidence, that PDX's coding of the Program was
> negligent or that the Program performed the task
> requested by Safeway in a negligent manner.  The
> evidence is instead that the Pharmacy System, as
> modified by the Program, did _precisely_ as Safeway had
> requested.  It is PDX's undertaking to give Safeway the
> print functionality it requested, and not the care with
> which that work was carried out, that is the basis of
> the Hardins' complaints.

Id. at 31 (footnotes omitted).

Based on the facts it recited in its brief, PDX took the

position that the express negligence doctrine established by

Ethyl Corp. simply does not apply to the KIA's indemnification

provision.  Alternatively, PDX took the position that even if
that doctrine did apply, the KIA indemnification provision
complied with it because the provision, when considered in
context with the other provisions of the KIA, clearly and
unambiguously demonstrated the parties' intent that Safeway would
indemnify PDX for the very conduct about which the Hardins
complained as to PDX in the California Action.  PDX argued in its
brief that the parties made clear in the KIA their "intent that
Safeway agreed to indemnify PDX for claims exactly like those
pending against PDX in the California Litigation."  Id. at 43.

PDX requested by its motion that the court declare that the
indemnity provision in the KIA is an enforceable agreement, that
Safeway has breached its indemnification obligation to PDX as to
the claims made against PDX by the Hardins in the California
Action, and that the court grant specific performance, ordering
Safeway to perform its indemnity obligations.  In addition, PDX
moved that the court award it recovery of its attorney's fees and
expenses pursuant to the provisions of the KIA.

III.

Analysis

A.   Pertinent Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides
that the court shall grant summary judgment on a claim or defense

11

if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case.  Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").  If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

B.   The Texas Express Negligence and Related Strict Liability
     Express Intent Rules

The express negligence doctrine as it pertains to indemnity
agreements was adopted in Texas by the Texas Supreme Court in
Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 706, 708 (Tex.
1987).  The Ethyl Corp. indemnity agreement provided that the
indemnitor indemnified and held harmless the indemnitee against
loss or damage as a result of "operations growing out of the
performance of this contract and caused by the negligence or
carelessness of [indemnitor, indemnitor's employees],
Subcontractors, and agents or licensees."  Id. at 707.  The Court
said that it adopted "the express negligence test for determining
whether the parties to an indemnity contract intend to exculpate
the indemnitee from the consequences of its own negligence."  Id.
at 706.  In the course of doing so, the Court rejected the "clear
and unequivocal language" test it previously had applied.  Id. at
707-708.  The goal in adopting the new test was to cut through
the ambiguity of many indemnity provisions.  Id. at 708.

In Ethyl Corp., the Court also adopted a "four corners" rule
for determining compliance with the express negligence test by
saying that "[u]nder the doctrine of express negligence, the
intent of the parties must be specifically stated within the four
corners of the contract."  Id. (emphasis added).  The Court
denied Ethyl Corp.'s indemnity claim on the ground that the

indemnity provision in question failed to meet the express negligence test. Id.

Since the Ethyl Corp. decision, the Texas Supreme Court has adhered to the express negligence doctrine. See, e.g., Fisk Elec. Co. v. Constructors & Assoc., 888 S.W.2d 813, 814-15 (Tex. 1994); Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508-09 (Tex. 1993); Atlantic Richfield Co. v. Petroleum Pers., Inc., 768 S.W.2d 724, 725-26 (Tex. 1989); Berry v. Dodson, Nunley & Taylor, P.C., 729 S.W.2d 690, 691 (Tex. 1987).

In some of its post-Ethyl Corp. decisions, the Texas Supreme Court has elaborated on the purpose of the express negligence doctrine. For example, in Atlantic Richfield Co., 768 S.W.2d at 726, the Court said that "[t]he purpose behind the adoption of the express negligence rule is to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee from the indemnitee's own negligence." In Ensearch Corp. v. Parker, 794 S.W.2d 2, 8 (Tex. 1990), the Court, after noting that under Ethyl Corp., "a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract," id. at 8, upheld an indemnity provision on the ground that "the contract as a whole is sufficient to define the parties' intent

that [the indemnitor] indemnify [the indemnitee] for the

consequences of [the indemnitee's] own negligence," id.

In Fisk Elec. Co., the Court explained that:

> The express negligence test was established by
> this Court in Ethyl in order "to cut through the
> ambiguity" of indemnity provisions, thereby reducing
> the need for satellite litigation regarding
> interpretation of indemnity clauses. Ethyl, 725 S.W.2d
> at 708. Parties seeking to indemnify themselves for
> their own negligence must express that intent in
> specific terms. Id. In Gulf Coast Masonry, Inc. v.
> Owens-Illinois, Inc., 739 S.W.2d 239 (Tex. 1987), we
> held that indemnity provisions that do not state the
> intent of the parties within the four corners of the
> instrument are unenforceable as a matter of law.

888 S.W.2d at 814. The Court added in Fisk Elec. Co. that "[t]he

express negligence requirement is not an affirmative defense but

a rule of contract interpretation" and that "[i]ssues of contract

interpretation are determinable as a matter of law," id.,

explaining that:

> The purpose of the express negligence rule "is to
> require scriveners to make it clear when the intent of
> the parties is to exculpate an indemnitee for the
> indemnitee's own negligence." Atlantic Richfield Co.
> v. Petroleum Personnel, Inc., 768 S.W.2d 724, 726 (Tex.
> 1989). Either the indemnity agreement is clear and
> enforceable or it is not. Such a determination should
> not depend on the outcome of the underlying suit, but
> should be established as a matter of law from the
> pleadings.

Id. at 815.

In Houston Lighting & Power Co. v. Atchinson, Topeka & Santa

Fe Ry. Co., 890 S.W.2d 455 (Tex. 1994), the Texas Supreme Court

applied the principle of the express negligence doctrine to a
case where the liability of the indemnitee to the third party was
based on the indemnitee's strict liability to the third party.
The Court adopted what it referred to as an "express intent
rule," id. at 458-59, holding that "parties to an indemnity
agreement must expressly state their intent to cover strict
liability claims in specific terms," id. at 459.

C.   The Court Has Concluded That the Indemnity Provision in the
     KIA Satisfies the Texas Express Negligence and Related
     Strict Liability Express Intent Rules

Safeway and PDX could not have made it any clearer within
the four corners of the KIA that the indemnity provision in the
KIA was intended to cover claims against PDX of exactly the kind
the Hardins are making against PDX in the California Action.  The
claims of the Hardins against PDX arose directly from Safeway's
use of the PDX Pharmacy Management system software, which is
referred to in the indemnity provision as "the Program."  The
most likely ways PDX could be held liable for Safeway's use of
the Program would be based on claims of negligence or strict
product liability on the part of PDX.  Within the four corners of
the KIA, the KIA indemnity provision necessarily expressed a
contemplation by the parties that Safeway's obligation to
indemnify PDX included claims based on PDX's own negligence and

strict liability.  If the indemnity provision were to be given
any other interpretation, it would be rendered meaningless.

The theories of liability alleged by the Hardins against PDX
in the California Action are based on precisely those
circumstances that were contemplated by the indemnification
provision.  See supra at 3-4.  The introduction in the opposition
of the Hardins to a special motion to strike that PDX filed in
the California Action makes clear that the theories of recovery
asserted by the Hardins against PDX are directly, and solely,
related to the decision of Safeway to elect to use the
modification of PDX's software program, stating:

> Plaintiffs' claims [against PDX] are premised on the
> fact that PDX knowingly risked the health and safety of
> prescription medicine consumers, including Plaintiff,
> Kathleen Hardin, by collaborating with Safeway to
> provide to Safeway pharmacy customers five section drug
> monographs, which were deficient according to the Food
> and Drug Administration ("FDA").

Doc. 19 at 062.

Safeway argues that the word "negligence" and the words
"strict liability" would have to be used in the indemnity
provision to satisfy the Texas requirements.  The court
disagrees.  Apropos here is language used by a Texas court of
appeals in Banzhaf v. ADT Sec. Sys. Sw, Inc.:

> The express negligence doctrine does not require
> that the indemnity provision use the specific word
> "negligence."  The test is whether the parties made it
> clear in the agreement that it was their intent to

17

provide for indemnification of the indemnitee's own
negligent acts.

28 S.W.3d 180, 189 (Tex. App.--Eastland 2000, pet. denied)
(citation omitted).  The indemnity provision in the KIA passes
the test because "the parties made it clear in the agreement that
it was their intent to provide for indemnification of the
indemnitee's own negligent acts."  Id. at 189.

Obviously Safeway and PDX both recognized when they entered
into the KIA that the decision of Safeway to eliminate the three
paragraphs from the monographs it prepared by use of the Program
could lead to liability on the part of PDX under theories of
negligence and strict liability.  PDX's agreement to allow
Safeway to create through use of PDX software monographs for
Safeway's customers that did not contain those paragraphs created
the need for PDX to require that the indemnity provision be
included in the KIA.  Those were the very risks to which the KIA
exposed PDX that the indemnity provision was intended to cover.

Safeway has not presented the court with any authority that
would cause the court to think that punitive damage claims
against PDX based on the conduct of PDX described in the
California Action would not be within the scope of the indemnity
provision.  The court concludes that they would be.

Therefore, Safeway's motion for summary judgment should be
denied, and PDX's motion should be granted as to its request for

a declaration that the indemnification provision causes Safeway
to be obligated to indemnify and hold PDX harmless from any and
all loss, damage, or expense related to the claims asserted by
the Hardins against PDX in the California Action.  Put another
way, PDX is entitled to a declaration that the indemnity
provision in the KIA applies to the claims that are being made by
the Hardins against PDX, and Safeway is obligated to provide
indemnification to PDX as to the claims being made against it by
the Hardins pursuant to such indemnity provision.

      The court is not ordering specific performance as requested
by PDX because the court considers such an order inappropriate in
a case such as this.  Presumably Safeway will honor its
indemnification obligations now that they have been judicially
established by this court (unless, of course, Safeway is
successful in an appeal from this court's declaratory rulings
against it).  If Safeway fails to comply with this court's
declarations, PDX will be at liberty to file another breach-of-
contract suit against Safeway, and will have the use of this
court's rulings by way of claim or issue preclusion.

D.    The Request of PDX for Recovery of Litigation Expenses

      PDX has requested recovery of litigation expenses pursuant
to the KIA.  Its request for attorney's fees and litigation
expenses incurred in enforcing the indemnity provision is based

on paragraph 8 of the KIA, which provides that "[i]n any legal action on or concerning this Agreement, the prevailing party shall be awarded its reasonable attorneys' fees, costs and necessary disbursements, to be paid by the non-prevailing party." Doc. 16 at 4, ¶ 8.   PDX is the prevailing party.

PDX has established in the summary judgment record through the affidavit of Mack Ed Swindle ("Swindle") that it has incurred reasonable and necessary litigation expenses of $61,739.31 in connection with this action through January 31, 2015, and that it anticipates that it will incur an additional $27,935.80 in reasonable and necessary litigation expenses in connection with this action from February 1, 2015 through entry of a final summary judgment by this court, for a total of $89,675.11. Doc. 19 at 0491, ¶ 60.[4]

Safeway's response to PDX's request for recovery of litigation expenses incurred in this action is limited to the contention that the request "should be denied because the Court should determine that PDX is not the prevailing party." Doc. 23 at 2.   The court is satisfied that PDX has provided credible, undisputed evidence supporting its claim for reasonable and

---

[4]The Swindle affidavit also estimates that PDX will incur an additional $35,000 as reasonable and necessary litigation expenses through the Fifth Circuit Court of Appeals. Doc. 19 at 0491, ¶ 60. This court does not have a practice of awarding fees anticipated to be incurred in an appeal, and is not doing so in this instance.

necessary litigation expenses incurred in connection with this action in the amount of $89,675.11. Therefore, the court is ordering that PDX have recovery from Safeway of that amount.

PDX also seeks recovery from Safeway pursuant to the KIA indemnification provision of reasonable and necessary litigation expenses incurred in the defense of PDX in the California Action. The indemnification provision specifically contemplates that PDX will have such a recovery from Safeway.

The defense litigation expenses have two components, litigation expenses incurred in defense of the California Action through Swindle's law firm and defense expenses incurred through the firm of Davis Wright Tremaine, LLP ("DWT"). Swindle's affidavit establishes that PDX has incurred through Swindle's firm $138,615.25 as reasonable and necessary litigation expenses in the defense of PDX in the California Action through January 31, 2015. Id. at 0495, ¶ 85. The court is satisfied that PDX has provided credible, undisputed evidence supporting its claim for reasonable and necessary litigation expenses incurred in connection with the defense of PDX through Swindle's firm in the California Action in the amount of $138,615.25. Therefore, the court is ordering that PDX have recovery from Safeway of that additional amount of litigation expenses, for a

21

total monetary recovery by PDX from Safeway of $228,290.36

($138,615.25 + $89,675.11 = $228,290.36).

The second aspect of PDX's request for recovery of defense litigation expenses pertains to expenses incurred in the defense of PDX in the California Action through DWT. Through the affidavit of Thomas R. Burke ("Burke"), PDX has established that the reasonable and necessary litigation expenses incurred in the defense of PDX in the California Action through the firm of DWT through February 11, 2015, is $760,537.70. Doc. 19 at 0302-03, ¶ 24. Giving effect to the statement made by Swindle in his affidavit that in his opinion one percent of the litigation expenses shown on the DWT billing statements were for discreet services that did not advance PDX's defense in the California Action, the court is reducing the $760,537.70 amount by one percent ($7605.38), resulting in $752,932.33 as reasonable and necessary litigation expenses incurred through DWT in the defense of PDX in the California Action. Safeway does not contest that amount as being reasonable and necessary litigation expenses incurred through DWT in the defense of PDX in the California Action. Therefore, the court finds, and declares, that $752,932.33 represents reasonable and necessary attorney's fees incurred through DWT in the defense of PDX in the California Action through February 11, 2015.

The court has not concluded that it should order a recovery
by PDX from Safeway of the litigation expenses incurred through
DWT because the court has a concern that the insurance company
that paid those litigation expenses on behalf of PDX is the real
party-in-interest within the meaning of Rule 17(a)(3) of the
Federal Rules of Civil Procedure, who perhaps should intervene in
this action if it wishes to recover, by way of subrogation
through PDX, the legal expenses it incurred on behalf of PDX in
the defense of the California Action.  The court will hear from
the parties further on that subject before making a final
decision.

Swindle and Burke each states in his affidavit that he
cannot anticipate at this time how much additional litigation
expense will be required in the defense of PDX in the California
Action.  Id. at 0303, ¶ 25, and 0495, ¶ 85.  The court assumes
that the parties will be able to resolve by agreement
reasonableness and necessity for any future litigation expenses
incurred on behalf of PDX in defense of the California Action.
Of course, if they are not, PDX (and the intervening insurance
company, if applicable) will be entitled in a future action to
seek whatever additional litigation expense recovery is
appropriate under the indemnity provision of the KIA as well as

any additional litigation expense covered by the KIA's
paragraph 8.

E.    Conclusion

Summarizing, (1) the court is denying Safeway's motion for
summary judgment, and (2) the court is granting PDX's motion for
summary judgment, except as to the issue of whether the insurance
company must intervene as the real party-in-interest before the
defense litigation expenses incurred through DWT can be awarded.
The court is withholding at this time entry of a final judgment
to give the parties an opportunity to provide the court briefing
on their respective positions on the need for the insurance
company to intervene and appropriate steps to be taken by the
court from this point forward as to the litigation expenses
incurred through DWT.

IV.

Order

Consistent with the foregoing,

The court ORDERS that all relief sought by the motion for
summary judgment of Safeway be, and is hereby, denied;

The court further ORDERS that the relief sought by the
motion for summary judgment of PDX be, and is hereby, granted
except as to any request that PDX, rather than its liability

24

insurer, be awarded the $752,932.33 in litigation expenses incurred through DWT;

The court further ORDERS that by April 7, 2015, each party file a document proposing to the court by way of appropriate argument and citation of authority a solution to the issues raised by the fact that PDX's liability insurance company, rather than PDX itself, incurred the litigation expenses through DWT in the defense of PDX in the California Action;

The court further ORDERS that PDX have and recover from Safeway the amount of $228,290.36;

The court further ORDERS and DECLARES that PDX, through its liability insurance carrier, has incurred reasonable and necessary litigation expenses through DWT in the amount of $752,932.33 in the defense of PDX in the California Action through February 11, 2015, and that either PDX or its liability insurer is entitled to recover that amount from Safeway;

The court further ORDERS and DECLARES that the indemnity provision in the KIA is an enforceable agreement; and

The court further ORDERS and DECLARES that Safeway is obligated pursuant to the indemnity provision of the KIA to indemnify and hold PDX harmless from any and all loss, damage, or expense (or claims of damage or liability) asserted against PDX by the Hardins in the California Action, including, without

limitation, reasonable attorney fees, salaries of PDX employees or executives called to testify or provide depositions, travel and accommodation costs for PDX employees or executives called to testify or give depositions, and reasonable legal costs incurred by PDX due to such claims.

SIGNED March 31, 2015.

_____

JOHN McBRYDE
United States District Judge